UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SHARON K. PAIGE-ARMSTRONG, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:17-cv-01573-MJD-TWP |
| | ) |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**ENTRY ON JUDICIAL REVIEW**

Plaintiff Sharon Paige-Armstrong ("Paige-Armstrong") applied for disability insurance benefits ("DIB") from the Social Security Administration ("SSA") on October 21, 2013, alleging an onset date of April 8, 2013. [Dkt. 10-5 at 2.] Her application was initially denied on February 7, 2014, [Dkt. 10-4 at 2], and upon reconsideration on May 20, 2014, [Dkt. 10-4 at 12]. Administrative Law Judge Judy Hilger Odell (the "ALJ") held a hearing on October 6, 2015. [Dkt. 10-2 at 39-73.] The ALJ issued a decision on January 28, 2016, concluding that Paige-Armstrong was not entitled to receive disability insurance benefits. [Dkt. 10-2 at 15.] The Appeals Council denied review on March 9, 2017. [Dkt. 10-2 at 2.] On May 12, 2017, Paige-Armstrong timely filed this civil action, asking the Court to review the denial of benefits pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c). [Dkt. 1.] For the reasons set forth below, the Commissioner's decision is **REVERSED** and **REMANDED**.

**I.
STANDARD OF REVIEW**

"The Social Security Act authorizes payment of disability insurance benefits … to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002). "The statutory

1

definition of 'disability' has two parts. First, it requires a certain kind of inability, namely, an inability to engage in any substantial gainful activity. Second, it requires an impairment, namely, a physical or mental impairment, which provides reason for the inability. The statute adds that the impairment must be one that has lasted or can be expected to last … not less than 12 months." *Id.* at 217.

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)-(v), evaluating the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted) (alterations in original). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four

is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(iv), (v). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

## II.
### BACKGROUND

Paige-Armstrong was 50 years old at the time she applied for DIB. [Dkt. 10-5 at 2.] She has at least a high school education and previously worked as a correctional officer. [Dkt. 10-2 at 28.][1]

---

[1] Both parties provided a detailed description of Paige-Armstrong's medical history and treatment in their briefs. [Dkt. 17; Dkt. 18.] Because that discussion implicates sensitive and otherwise confidential medical information concerning Paige-Armstrong, the Court will simply incorporate those facts by reference and detail specific facts only as necessary to address the parties' arguments.

3

The ALJ followed the five-step sequential evaluation set forth by the Social Security Administration in 20 C.F.R. § 404.1520(a)(4) and ultimately concluded that Paige-Armstrong is not disabled. [Dkt. 10-2 at 29.] The ALJ found as follows:

- At Step One, the ALJ found that Paige-Armstrong has not engaged in substantial gainful activity[2] since April 8, 2013, the alleged onset date. [Dkt. 10-2 at 20.]

- At Step Two, the ALJ found that Paige-Armstrong has the following severe impairments: diabetes, migraine[s], pancreatitis, "anxiety/depression/conversion disorder," obesity, and status post bilateral rotator cuff surgery. [Dkt. 10-2 at 20.]

- At Step Three, the ALJ found that Paige-Armstrong does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. [Dkt. 10-2 at 21.]

- After Step Three but before Step Four, the ALJ found that Paige-Armstrong has the RFC to "perform light work as defined in 20 CFR 404.1567(b) except the claimant can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl, but can never climb ladders, ropes or scaffolds; she can frequently handle and finger with both hands; she can occasionally reach overhead with both upper extremities; the claimant can occasionally be exposed to extreme cold, extreme heat, wetness, humidity, vibration, fumes, odors, dust and gases; she can never be exposed to unprotected heights, or moving mechanical parts and can never be required to drive a motor vehicle; she can work in an environment with a noise intensity level of 3 or less (based on the noise intensity chart based in the DOT, where 1 is very quiet, 2 is quiet, and 3 is a moderate level of noise); she can move between a sitting and standing position on the job at least every 30 minutes, assuming that it would take 1 minute to make the change in position; and the claimant is limited [to] work requiring simple, routine tasks, with occasional contact with supervisors, coworkers and the general public." [Dkt. 10-2 at 23.]

- At Step Four, the ALJ concluded, after considering Paige-Armstrong's age, education, work experience, and RFC and relying on the testimony of the vocational expert ("VE"), that Paige-Armstrong is incapable of performing her past relevant work as a correctional officer. [Dkt. 10-2 at 28.]

- At Step Five of the analysis, the ALJ found based on VE testimony considering Paige-Armstrong's age, education, and RFC, that there were jobs that existed in significant numbers in the national economy that Paige-Armstrong could have performed through the date of the decision. [Dkt. 10-2 at 28.]

---

[2] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

4

# III.
## DISCUSSION

Paige-Armstrong makes two assertions of error, 1) the ALJ's RFC finding that Paige-Armstrong can sustain work is unsupported by substantial evidence or relevant legal standards, and, 2) the ALJ failed to properly account for limitations resulting from Paige-Armstrong's concentration related deficits.

### A. Sustaining Work

Paige-Armstrong argues that the ALJ failed to consider whether Paige-Armstrong's combined conditions would allow her to sustain full-time work, as required by Social Security Ruling ("SSR") 96-8p. [Dkt. 17 at 21-22.] Paige-Armstrong argues that in doing so the ALJ failed to build a logical and accurate bridge between the evidence and her conclusions while confronting conflicting evidence. *Id.* She also argues that her case is indistinguishable from the Seventh Circuit decision in *Gentle*. [Dkt. 17 at 23-24.]

The Commissioner argues that the ALJ reasonably supported her RFC finding and followed SSR 96-8p in doing so. [Dkt. 18 at 16.] The Commissioner also argues that Paige-Armstrong assumes that the ALJ must accept her subjective complaints and attempts to shift her burden of proof with rhetorical arguments. [Dkt. 18 at 18.] The Commissioner further argues that the ALJ is not required to address every piece of evidence, having met her burden to minimally articulate her findings so that the Court can trace her reasoning. [Dkt. 18 at 18-19.]

In her reply, Paige-Armstrong argues that the Commissioner's response is an example of forbidden *post hoc* rationale. [Dkt. 19 at 1.]

When asked to give an opening statement at the administrative hearing, Paige-Armstrong's representative argued that she would be unable "sustain" any work, due to "the stress of that work." [Dkt. 10-2 at 43.] When asked by the ALJ to proceed with the direct

examination of Paige-Armstrong, her representative focused on "stomach pains" that interrupted and ultimately ended her employment, [Dkt. 10-2 at 47-48], the need for numerous emergency room and doctor visits with multiple providers, [Dkt. 10-2 at 29], continuing episodic disturbance of gait necessitating the use of a walker "once or twice in a month," [Dkt. 10-2 at 50-51], neck pain, [Dkt. 10-2 at 53], and depressive episodes at "least a few times in a month." [Dkt. 10-2 at 57].

The ALJ's own examination of the VE revealed most employers would not tolerate "much more than one absence per month" with unskilled work, inclusive of using sick days, personal days, and vacation days (at least two absences a month would not permit competitive employment with unskilled or semi-skilled jobs).[3] [Dkt. 10-2 at 69-70.] "In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and *continuing basis* (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." SSR 96-8p [emphasis added]. "The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." *Id.*; *see* 20 C.F.R. § 402.35(b)(1) ("Social Security Rulings are binding on all components of the Social Security Administration."). However, the ALJ's decision offers very little in the way of explaining how she concluded that Paige-Armstrong could sustain work on a continuing basis.

In fact, the only relevant analysis offered by the ALJ focuses on Paige-Armstrong's activities of daily living. The ALJ notes:

---

[3] The ALJ ultimately found that Paige-Armstrong was limited to unskilled work, as will be discussed more fully later in the entry. *See* [Dkt. 10-2 at 29.]

> It appears that despite her impairments, the claimant has engaged in a somewhat normal level of daily activity and interaction. The record shows that the claimant goes outside one to three times per week, and shops in the grocery store once per week. (3E/5). The claimant also watches television, and goes online to play games and social media. (3E/5). The claimant reports that she goes to church almost every other week and visits with close friends biweekly, and she denied problems getting along with others. (3E/6, 7). The physical and mental capabilities requisite to performing many of the tasks described above as well as the social interactions replicate those necessary for obtaining and *maintaining employment*.

[Dkt. 10-2 at 26 [emphasis added]]. In *Bjornson,* the Seventh Circuit explained that the "critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons (in this case, Bjornson's husband and other family members), and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases." *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) (*see Punzio v. Astrue,* 630 F.3d 704, 712 (7th Cir. 2011) [additional citations omitted]). The Court largely agrees with the ALJ that the listed activities have some bearing on Paige-Armstrong's ability to interact with others; by extension, they might also indicate the requisite social skills necessary to obtain employment. However, the ability to go shopping once a week, go outside one to three times a week, watch television, use the internet, attend church biweekly, and visit friends biweekly hardly replicates the ability to maintain a full-time working schedule without missing more than one day per month. All of these tasks could be collectively accomplished even by someone that has more bad days than good ones.

Paige-Armstrong's argument that her case is similar to the one in *Gentle* is well taken.[4] In *Gentle*, the Court dealt with a case like the instant one involving a claimant found capable of a

---

[4] The Commissioner makes no attempt to distinguish *Gentle* in her brief.

range of light work requiring her to be on her feet for most of the day. *Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir. 2005). The Court held that the ALJ's "analysis of the evidence was deficient" because it "attached great significance" to the fact that Gentle was able to perform comparatively more significant activities than here, including taking care of two small children and household chores. *Id.* The Court reasoned that even "taking care of an infant, although demanding, has a degree of flexibility that work in the workplace does not." *Id.* Paige-Armstrong testified to receiving assistance from her husband and her daughter for all of the household chores, due to issues standing and neck and back pain. [Dkt. 10-2 at 57-59.] She also endorsed at times needing to leave church service early and using a cart to get around the store when she did go shopping. [Dkt. 10-2 at 61-62.] Returning to *Gentle,* the Court also found the error compounded by a failure of the ALJ to consider combined impairments of degenerative disc disease, obesity, concentration issues, allergies, anxiety and depression, as well as the stresses of work and their effect on attendance. *Gentle*, 430 F.3d at 868-69 (The Courts analysis focuses on a failure to consider obesity at all).[5] Paige-Armstrong suffers from all the same conditions, except substitute asthma for allergies and add migraines, pancreatitis, shoulder problems, and conversion disorder.[6] As in *Gentle,* the Court is not saying that the evidence demonstrates an inability to sustain work, but rather that it's the ALJ's duty in the first instance to decide the issue and explain her findings. *Id.* The Court's review of the decision does not see that the ALJ has done so here, despite the hearing paying ample attention to the issue, other than the problematic analysis of activities of daily living discussed above.

---

[5] In the instant case, the ALJ acknowledges obesity as a severe impairment and discusses that she has considered that it can affect other conditions, as required by SSR 02-1p, but fails to explain any of her conclusions regarding the impairment or demonstrate how her findings are supported by the evidence of record. [Dkt. 10-2 at 26.]

[6] The ALJ never mentions Paige-Armstrong's degenerative disc disease of the cervical spine, despite complaints of back and neck pain both in the record and during the hearing. *See* [Dkt. 10-10 at 70-71 (MRI of the cervical spine).]

Paige-Armstrong argues in her brief that her attendance issues are supported by a record "replete with hospitalizations, headaches, and exacerbations of a psychological condition." [Dkt. 17 at 21.] "Being in the hospital with abdominal pain, in a dark room due to a headache, or unable to leave the house because your mind will not allow you to walk are situations which should have impacted the ALJ's determination of whether [Paige-Armstrong] could sustain full-time work. Yet, the ALJ never discusses the implications." *Id.* In support, Paige-Armstrong offers citations to a fairly modest list of doctor visits addressing acute symptoms over a considerable length of time during the period at issue, with some brief hospital admissions and further adds that she needs to attend weekly therapy visits. [Dkt. 17 at 22-23.]

In response, the Commissioner attacks the sufficiency of this evidence to support the ultimate conclusion that Paige-Armstrong is disabled. [Dkt. 18 at 17.] Had the ALJ made the arguments the Commissioner now makes, the Court might be persuaded. "Under the *Chenery* doctrine, the Commissioner's lawyers cannot defend the agency's decision on grounds that the agency itself did not embrace." *Kastner v. Astrue*, 697 F.3d 642, 648 (7th Cir. 2012) (citing *SEC v. Chenery Corp.,* 318 U.S. 80, 87–88 (1943); *Parker v. Astrue,* 597 F.3d 920, 922 (7th Cir.2010)). The determinative issue here is not the sufficiency of the evidence, but the ALJ's failure to address the reported symptom-related functional limitations and restrictions, as required by the ruling. SSR 96-8p. Moreover, the ALJ's lack of explanation frustrates meaningful review from the Court by running afoul of Seventh Circuit articulation standards. The ALJ is required to provide a "logical bridge" between the evidence and her conclusions. *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004). The ALJ's explanation fails to provide that logical bridge.

The Commissioner's remaining arguments concerning the issue similarly fail. The Commissioner is correct that the burden is on the claimant to produce sufficient evidence to substantiate the claim at the first four steps of the process. The Commissioner is also correct that the ALJ need not address every bit of evidence. And once again, the Commissioner is correct that the ALJ is not required to adopt the claimant's subjective complaints. However, the ALJ has the duty to explain the subjective complaints and why the supporting evidence is not sufficient to meet the burden of proof in some way that the Court can follow. For the foregoing reasons, the Court finds that remand is required to address Paige-Armstrong's specific allegations that she cannot sustain work.

In the interest of completeness and providing guidance in future adjudication of this claim, the Court feels obligated to address a related issue to the one above where again the ALJ fails to provide a logical bridge to her conclusions. The ALJ does not completely ignore complaints of headaches and abdominal pain, which Paige-Armstrong now argues would preclude her from sustaining work. The ALJ did find that Paige-Armstrong has corresponding severe impairments of pancreatitis and migraines. [Dkt. 10-2 at 20.] However, when it comes to the specific impairments, the ALJ does not explain how she reached the conclusion that Paige-Armstrong's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." [Dkt. 10-2 at 24.] The ALJ does summarize some of the evidence supporting these complaints, including that Paige-Armstrong has been to the emergency room on multiple occasions for each condition. [Dkt. 10-2 at 25.] The ALJ doesn't explain how the complaints are contradicted.

The only real conclusion the ALJ offers is that the RFC "at a light exertional level, and the option to sit or stand, accommodates the claimant's rotator cuff impairments, her obesity,

10

pain and fatigue related to her diabetes, migraines, and pancreatitis, in that it *requires less standing and walking* and lower lifting limits." [Dkt. 10-2 at 27-28.] For one, complaints of headaches and abdominal pain might be exacerbated by exertional activity, but the ALJ does not demonstrate that the evidence shows that exertional limits would fully address complaints of this type, nor is it logically apparent to the Court that the principal concern with abdominal pain and headaches is how much one needs to stand, walk and lift.

Even if that were the case, the Court is not persuaded that the ALJ has effectively limited the amount of standing and walking that would be required of Paige-Armstrong. How does the RFC demand less standing and walking and in comparison to what exactly? Both light work and medium work (the exertional level above), ordinarily have the identical requirements of a good deal of standing and walking "of approximately 6 hours of an 8-hour day." SSR 83-10 (the difference between the two exertional levels is with lifting, carrying and postural requirements). The description of medium work notes that "[a]s in light work, sitting may occur intermittently during the remaining time." *Id.* Ordinarily, light work is distinguished from sedentary work (the exertional level below), because "it requires a good deal of walking or standing." *Id.* However, a "job is also in this category when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work." *Id.* "Relatively few unskilled light jobs are performed in a seated position." *Id.* The problem is that the RFC does not effectively limit the total amount of standing and walking beyond the usual definition of light work. [Dkt. 10-2 at 23.] It's true that the ALJ adds an additional limitation that "she can move between a sitting and standing position on the job at least every 30 minutes, assuming that it would take 1 minute to make the change in position." *Id.* This may preclude the performance of certain jobs that would require standing for more than

thirty minutes at one time. However, it's clear when providing light jobs in response to hypotheticals that the VE was still working under the assumption that the ALJ's RFC included the capacity to stand and walk for a total of six hours in an eight-hour day. In response to questioning from Paige-Armstrong's representative, the VE testified that if Paige-Armstrong were limited to standing and walking for four hours in an eight-hour day, the jobs that were offered as fitting the ALJ's hypothetical (which would ultimately match her RFC finding) would be precluded. [Dkt. 10-2 at 71.] The VE reiterated that the jobs that Paige-Armstrong was ultimately found capable of performing still required standing and walking for six hours, even if they could accommodate the need for a sit/stand option every thirty minutes. *Id.* The VE further testified that there would be no light work at all available for someone that could only stand and walk for four hours, when combined with the other limitations in the ALJ's hypothetical. *Id.* If the ALJ meant to explain that she had accommodated Paige-Armstrong's complaints by limiting her standing and walking at one time, but not total, that distinction appears fairly hollow. Even if Paige-Armstrong were given the option to sit every thirty minutes, it's apparent she would not be able to sit for very long if she was still required to be on her feet for six out of eight hours. Based on the fact she was found incapable of her past relevant work, her age, the lack of transferable skills to light or sedentary work, and the Medical-Vocational guidelines, the ability to do light work is the critical question in determining if she is disabled at Step Five of the process. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 201.14 and Rule 202.14. On remand, clarification is needed to explain how the RFC addresses Paige-Armstrong's severe impairments of pancreatitis and migraines. Additionally, clarification is need to explain how the RFC effectively limits her ability to stand and walk.

**B. The RFC Findings and VE Hypotheticals**

Paige-Armstrong argues that the ALJ committed legal error by failing to account for all of her own findings in hypotheticals to the VE, in particular omitting corresponding limitations of concentration, persistence, or pace. [Dkt. 17 at 24.]

The Commissioner argues that any error the ALJ may have made in articulating her RFC and resulting hypotheticals to the VE was harmless, because Paige-Armstrong's representative's questioning properly oriented the VE to all of the limitations supported by the ALJ's findings. [Dkt. 18 at 19-22.]

Having found that Paige-Armstrong's first assignment of error requires remand, the Court need not fully address her second assignment of error. However, the Court finds that the second assignment of error also supports remand for further proceedings, albeit while noting that it implicates multiple issues more nuanced than either party in the suit appears to fully acknowledge in their briefs. The Court recognizes two distinct but related issues raised by Paige-Armstrong's assignment of error. Number one, does the ALJ's RFC finding and resulting hypotheticals adequately incorporate the moderate limitations of concentration, persistence or pace that she found supported by the record in her paragraph "B" mental limitation findings? Number two, was the VE oriented to all of the limitations supported by the record when providing testimony that there was other work that could be performed at Step Five? The Court believes the answer to number one is *probably* yes. However, regardless of what the answer to issue number one is, the Court holds that the answer to number two is no, requiring remand.

Working backward and beginning with issue number two, the Court notes the general rule. The hypothetical question posed by the ALJ to the VE must fully set forth the claimant's impairments to the extent that they are supported by the medical evidence in the record. *Herron*

13

*v. Shalala,* 19 F.3d 329, 337 (7th Cir. 1994) (citing *Cass v. Shalala,* 8 F.3d 552, 556 (7th Cir.1993)). Here, the ALJ states:

> It should be noted that, at the hearing, I did not include in my hypothetical to the vocational expert, the requirements of simple, routine tasks, with occasional contact with supervisors, coworkers and the general public, which is part of the claimant's residual functional capacity. These limitations were added after receiving Dr. Brook's responses to the medical interrogatories, in which he included a mental residual functional capacity. (41F/8). However, the jobs that the vocational expert gave, all have a specific vocational preparation of 2, indicating unskilled work, involving simple, routine tasks.

[Dkt. 10-2 at 29.] At first blush, it appears that the ALJ's analysis is deficient, because she does not even attempt to explain how she concluded that the jobs could be performed by an individual limited to occasional contact with supervisors, coworkers, and the general public. However, the Court finds that the record demonstrates that these limitations were adequately conveyed to the VE. First, all of the progressive hypotheticals to the VE included the limitation to occasional contact with the public. [Dkt. 10-2 at 67-68.] Second, the Court agrees with the Commissioner that any failure by the ALJ to include limitations to occasional contact with coworkers and supervisors is harmless where Paige-Armstrong's hypothetical questions to the VE added these limitations to the ALJ's hypotheticals. [Dkt. 10-2 at 72.] It makes no difference how, the critical question is simply if the VE was adequately oriented to the full limitations. *See Herron,* 19 F.3d at 337 ("Moreover, Herron's attorney expanded the record by posing additional hypotheticals to the VE that included Herron's other nonexertional impairments"); *see also Ittel v. Astrue,* 2013 WL 704661, at *14 (N.D. Ind. Feb. 26, 2013) (suggesting RFC deficiencies may be harmless so long as the hypothetical adequately accounts for all the limitations (citing *generally O'Connor–Spinner v. Astrue,* 627 F.3d 614 (7th Cir. 2010))).

However, none of the hypotheticals posed to the VE included a limitation to simple, routine tasks. The ALJ made the determination on her own, without the input of an expert, that the jobs

the VE had provided in response to hypotheticals could also be performed by an individual limited to simple, routine tasks. The ALJ sent interrogatories to a medical expert after the hearing to resolve her questions about Paige-Armstrong's mental health limitations. The obvious thing to have done would have been to send interrogatories to the VE to resolve whether an individual with the additional limitations found by the medical expert could perform other work. Instead, the ALJ chose to rely on her own lay judgment. While the Court can see, in part, how the ALJ arrived at her conclusion, the Court is not fully convinced the resolution was proper. The VE did provide the specific vocational preparation ("SVP") levels of the jobs she had listed. All three jobs had an SVP level of two. [Dkt. 10-2 at 67-68.] SSR 00-4p notes that an SVP level of two corresponds with "unskilled work." SSR 00-4p. The regulatory definition of unskilled work "is work which needs little or no judgment to do *simple* duties that can be learned on the job in a short period of time." 20 C.F.R. 404.1568(a) [emphasis added]. However, the Court is not able to resolve whether the jobs also involve "routine" tasks, simply because they have an SVP level of two. Furthermore, the Court cannot conclude that there would be no cumulative effect of an additional limitation to simple, routine tasks when added in combination with the other limitations in the RFC. These are questions for a VE. The ALJ's failure to consult an expert as to the effects of the full limitations of record on the ability to do other work at Step Five requires remand.

Returning briefly to issue one, does the ALJ's RFC finding and resulting hypotheticals adequately incorporate the moderate limitations of concentration, persistence or pace that she found supported by the record in her paragraph "B" mental limitation findings? That is, did the particular terms of the ALJ's RFC finding adequately convey the full limitations supporting that finding? The Court declines to resolve the issue, having found adequate independent grounds to support the need for remand. The ALJ's decision frustrates the Court's analysis where she assigns

15

seemingly equal "great weight" to differing opinions as to Paige-Armstrong's mental health limitations. [Dkt. 10-2 at 27-28.] In *Milliken*, the Seventh Circuit addressed some of the nuances of this issue, whereby it is not the case that moderate limitations of concentration, persistence, or pace can never be adequately accounted for by a limitation to unskilled work, so long as the ALJ is directly adopting the limitations of a medical expert. *Milliken v. Astrue*, 397 F. App'x 218, 221–22 (7th Cir. 2010) (citing *Johansen v. Barnhart,* 314 F.3d 283, 288-89 (7th Cir.2002)). On the one hand, it appears that the ALJ did adopt the mental health limitations in her RFC finding directly from the opinion of a medical expert, Dr. Brooks, who responded to medical interrogatories after the hearing.[7] [Dkt. 10-2 at 27, 29.] However, in *Yurt,* the Seventh Circuit distinguished *Johansen*, rejecting the Commissioner's argument that the ALJ could directly rely on the limitations found in a state agency narrative, depending on the particular findings that form the basis of the opinion, including the claimant's supporting conditions and the more precise functional areas of concern. *See Yurt v. Colvin,* 758 F.3d 850, 858-59 (7th Cir. 2014). The basis of the opinion is critical to the analysis. The Court finds it particularly confusing that the ALJ appears to adopt the limitations directly from Dr. Brooks, but that Dr. Brooks opined only **mild** limitations in concentration, persistence, or pace. [Dkt. 10-20 at 27.] Whereas, the ALJ found **moderate** limitations in concentration, persistence, or pace, citing to the record that Paige-Armstrong's "attention and concentration were noted to be only fair during a mental status examination. (23F/ 18)." [Dkt. 10-2 at 22 (finding moderate limitations in social functioning and citing to Dr. Brook's opinion directly).] The ALJ's analysis is not entirely clear based on the record. The decision as a whole

---

[7] Though not raised by Paige-Armstrong in this suit, the Court finds it rather remarkable that the ALJ issued a decision on January 28, 2016, without even responding to Paige-Armstrong's request on November 6, 2015, to cross-examine Dr. Brooks, who appears from the decision to be the principal witness against her. [Dkt. 10-4 at 59.] The apparent reason that Paige-Armstrong was not given the opportunity to confront Dr. Brooks, who was contacted by interrogatory after the hearing, is that Paige-Armstrong made the request one day late, when given only ten days to respond to the additional evidence.

appears to the Court to be most similar to *Johansen,* where the terms of the RFC were deemed adequate in reliance on a medical opinion. On remand, the ALJ should clarify the basis of her findings and make sure that the RFC and resulting hypotheticals fully reflect that basis.

## IV.
### CONCLUSION

For the reasons detailed herein, the Court **REVERSES** the ALJ's decision denying Paige-Armstrong's benefits and **REMANDS** this matter for further proceedings pursuant to 42 U.S.C.§ 405(g) (sentence 4) as detailed above. Final Judgment will issue accordingly.

SO ORDERED.

Dated: 13 MAR 2018

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Timothy E. Burns
KELLER & KELLER
timb@2keller.com

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE
kathryn.olivier@usdoj.gov

Matthew Frederick Richter
KELLER & KELLER LLP
mrichter@2keller.com

Joseph R. Wambach
KELLER & KELLER
joew@2keller.com